OPINION
Defendant-appellant, Kevin B. Lee, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count each of aggravated burglary, felonious assault, rape, kidnapping, and aggravated robbery, all with at least one specification, and two counts of receiving stolen property. In addition, the trial court found defendant to be a "sexual predator" pursuant to R.C. Chapter 2950.
According to the state's evidence, in the early morning of May 21, 1999, defendant entered Alma Hannum's house, assaulted Hannum, raped her, robbed her, and stole jewelry. Defendant also forced Hannum to give him an ATM card and to accompany him while he drove her car to a bank to make a withdrawal from her account with the ATM card. Because Hannum had mistakenly given defendant a credit card instead of the ATM card, defendant and Hannum returned to Hannum's home so she could provide defendant with the correct card. At one point, defendant left Hannum alone as she searched for the ATM card, and Hannum escaped to a neighbor's house. After obtaining the victim's description of her assailant, police commenced a search for defendant who had fled in Hannum's car.
After fleeing Hannum's house, defendant saw Herbert Taylor on a neighborhood street and asked Taylor to drive him to a crack house in exchange for providing Taylor with money for gasoline. Defendant parked Hannum's car, and Taylor drove defendant, who was carrying a pillowcase with something inside it, to the crack house. Although Taylor initially waited in his car for defendant, Taylor later went inside the house. Before defendant and Taylor left the crack house, the victim's jewelry was put in another pillowcase because the original pillowcase was torn. Defendant and Taylor then drove toward the location where defendant had parked Hannum's car.
While defendant and Taylor were traveling back to Hannum's car, police observed defendant in the passenger seat of Taylor's car, saw that he matched the description Hannum had provided, and stopped the car after determining Taylor had outstanding warrants. Subsequent to the stop, police searched the vehicle, found a pillowcase with jewelry, and arrested defendant.
Later that same morning, Hannum identified defendant in a photo array. She recognized defendant as her attacker the first time she saw the array, and was certain of her identification.
By indictment filed May 28, 1999, defendant was charged with one count of aggravated burglary with specification as a repeat violent offender, one count of felonious assault with specification as a repeat violent offender, one count of rape with specifications as a repeat violent offender and a sexually violent predator, one count of kidnapping with specification as a repeat violent offender, one count of aggravated robbery with specification as a repeat violent offender, and two counts of receiving stolen property.
A jury trial was held, with the specifications tried to the court. The jury rendered a guilty verdict on all counts. The trial court found defendant guilty of the repeat violent offender specifications, but not guilty of the sexually violent predator specification. Following a sexual predator hearing pursuant to R.C. 2950.09, the trial court found defendant to be a sexual predator. The trial court sentenced defendant and ordered restitution in the amount of $3,335 to Hannum. Defendant appeals, assigning the following errors:
 I. IN VIOLATION [OF] R.C. 2941.25 AND THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DOUBLE JEOPARDY), DEFENDANT-APPELLANT WAS CONVICTED OF TWO COUNTS OF RECEIVING STOLEN PROPERTY, AGGRAVATED ROBBERY, AGGRAVATED BURGLARY, AND FELONIOUS ASSAULT.
 II. DEFENDANT-APPELLANT'S CONVICTION WAS OBTAINED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FEDERAL AND OHIO CONSTITUTIONS.
 III. DEFENDANT-APPELLANT WAS HIGHLY PREJUDICED AND DENIED A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN, IN VIOLATION OF THE TRIAL COURT'S ORDER, A STATE WITNESS TESTIFIED THAT SEVERAL DROPS OF UNTESTED BLOOD WAS ON THE CLOTHING OF DEFENDANT-APPELLANT. THIS ACT CONSTITUTED PLAIN ERROR AND/OR DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.
 IV. APPELLANT WAS HIGHLY PREJUDICED AND DENIED A FAIR TRIAL IN VIOLATION WITH [sic] THE FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES, ARTICLE 10 OF THE OHIO CONSTITUTION, AND THE OHIO RULES OF EVIDENCE, WHEN A WITNESS INFERRED THAT DEFENDANT-APPELLANT HAD BEEN IN PRISON.
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT-APPELLANT TO NOT ONLY THE MAXIMUM SENTENCES FOR FELONIOUS ASSAULT, BURGLARY AND RAPE, BUT ALSO ABUSED ITS DISCRETION IN SENTENCING DEFENDANT-APPELLANT TO AN ADDITIONAL SEVEN YEARS AS A REPEAT VIOLENT OFFENDER.
Defendant's first assignment of error contends the trial court violated R.C. 2941.25 and the Double Jeopardy Clause of the Fifth Amendment through its jury instructions.
Preliminarily, defendant failed to object in the trial court, and therefore waived any error. Absent objection, plain error must be proven to warrant reversal. State v. Moss (Dec. 28, 1999), Franklin App. No. 99AP-30, unreported. To prove plain error, defendant must demonstrate that, but for the error, the trial's outcome would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, 97. Additionally, "[n]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
The protection against double jeopardy afforded by federal and state constitutions guards against both successive prosecutions and cumulative punishments for the same offense. State v. Rance (1999), 85 Ohio St.3d 632,634. See, also, Section 10, Article I, Ohio Constitution. "In Ohio it is unnecessary to resort to the Blockburger test [Blockburger v. United States (1932), 284 U.S. 299] in determining whether cumulative punishments imposed within a single trial for more than one offense resulting from the same criminal conduct violate the federal and state constitutional provisions against double jeopardy. Instead, R.C. 2941.25's two-step test answers the constitutional and state statutory inquiries. The statute manifests the General Assembly's intent to permit, in appropriate cases, cumulative punishments for the same conduct." Id. at 639. Accordingly, defendant's double jeopardy argument must be examined under R.C. 2941.25, Ohio's multiple-count statute.
"With its multiple-count statute Ohio intends to permit a defendant to be punished for multiple offenses of dissimilar import. R.C. 2941.25(B); State v. Blankenship (1988), 38 Ohio St.3d 116, 117 * * * If, however, a defendant's actions `can be construed to constitute two or more allied offenses of similar import,' the defendant may be convicted (i.e., found guilty and punished) of only one. R.C. 2941.25(A). But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B). State v. Jones (1997), 78 Ohio St.3d 12, 13-14." Id. at 636. (Emphasis sic. and citations omitted.)
In analyzing whether crimes are allied offenses of similar import, the Ohio Supreme Court determined "the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract. * * * Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" (Emphasis sic.) Id. at 638, quoting State v. Jones (1997), 78 Ohio St.3d 12, 14. Here, defendant contends R.C. 2941.25 was violated because the trial court's jury instructions made the infliction of physical harm a necessary element of the aggravated burglary charge "* * * (meaning that it was necessary for the jury to find that defendant inflicted serious harm on the victim) (i.e., felonious assault), in order to find him guilty of aggravated burglary * * *." (Defendant's corrected brief, 10.)
A comparison of the elements of felonious assault, aggravated burglary, and aggravated robbery, reveals they are not allied offenses of similar import. Under the statutes in effect at all times pertinent to defendant's charges, to establish felonious assault the state was required to prove that defendant (1) knowingly (2) caused serious physical harm to another. See State v. Blankenship (1988),38 Ohio St.3d 116, 118; R.C. 2903.11. To establish aggravated burglary, the evidence had to show "trespass in an occupied structure by force, stealth, or deception where the offender inflicts or attempts to threaten to inflict physical harm." Moss, supra; R.C. 2911.11. Aggravated robbery required the state to show defendant, in attempting, committing, or fleeing from a theft offense, had a deadly weapon or dangerous ordnance, or inflicted or attempted to inflict serious physical harm on another. State v. Baird (Sept. 17, 1996), Franklin App. No. 96APA03-286, unreported, dismissed, appeal not allowed (1997), 77 Ohio St.3d 1543; R.C. 2911.01(A).
The commission of aggravated burglary or aggravated robbery does not necessarily result in the commission of felonious assault. To have committed felonious assault under former R.C. 2903.11, defendant must have actually caused serious physical harm to another. However, to commit aggravated burglary and aggravated robbery, defendant need only attempt to inflict physical harm on another. See R.C. 2911.11(A)(1), and 2911.01(A)(3).
Similarly, defendant's conviction for felonious assault under former R.C. 2903.11, and his receiving stolen property conviction under former R.C. 2913.51, do not violate R.C. 2941.25. Receiving stolen property under former R.C. 2913.51 required receiving, retaining, or disposing of another's property knowingly or having reasonable cause to believe that the property was obtained through commission of a theft offense. Felonious assault, as noted, required knowingly causing serious physical harm to another. Because the elements do not correspond, receiving stolen property under former R.C. 2913.51 and felonious assault under former R.C. 2903.11 are of dissimilar import. See Rance, supra, at 636 ("If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends the multiple convictions are permitted"). Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error contends his convictions are against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,387, reconsideration denied (1997), 79 Ohio St.3d 1451 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Defendant argues that the victim's identification testimony, as well as Taylor's testimony, were not credible, while a defense witness presented "confident and credible" evidence. (Defendant's corrected brief, 13.) Defendant's challenge to the jury's determination of credibility and weight of the evidence is unpersuasive.
The jury heard testimony that the victim's home was dark, the victim was not wearing eyeglasses at the time of the attack, and the victim did not completely identify certain clothing items or notice a scar on the back of defendant's head. The jury, however, also heard the victim's testimony about the events that occurred and their attendant circumstances, the victim's identification of defendant in a photo array, and the victim's unequivocal identification of defendant at trial. As this court noted in Conley, "[o]nly when a reviewing court finds that a reasonable juror could not find the testimony of a witness to be credible is it appropriate for a court to interfere in the factual finding of the trier of fact accepting the testimony of such witness. * * * [The] mere possibility that an eyewitness may be mistaken does not entitle this court to interfere with a jury determination on the basis that it is against the manifest weight of the evidence." Moreover, in its role as trier of fact, the jury had the opportunity to evaluate the demeanor of Taylor, his past criminal record and use of illicit substances, and the credibility and weight of his testimony. The state presented sufficient evidence to support defendant's conviction and a reasonable juror could find the victim's and Taylor's testimony to be credible.
Defendant also challenges the substance and credibility of the scientific evidence admitted at trial. Defendant contends discontinuities concerning the amount of blood found on the victim's clothing and the amount of blood found on defendant's clothing render defendant's conviction against the manifest weight of the evidence. Defendant's conclusions about the significance of the discontinuity of blood evidence are argument, and were properly considered along with the other evidence. Scientific evidence admitted at trial demonstrated within a reasonable degree of scientific certainty that the victim's blood and hair were found on defendant's clothing. The jury's province includes determining the credibility and weight to be given to that evidence, evaluating any discontinuities concerning the amount of blood found on the victim and defendant, and considering the arguments of the prosecution and defense counsel concerning the significance of that evidence. Because the jury reasonably could conclude the differing amounts of blood on the victim's clothing and defendant's clothing were not dispositive, the jury's verdict was not against the manifest weight of the evidence. Accordingly, defendant's second assignment of error is overruled.
Defendant's third assignment of error contends (1) defendant was highly prejudiced and denied a fair trial because a state witness testified about untested blood, and (2) defendant was denied effective assistance of counsel because defense counsel failed to object to that testimony at trial.
Outside the jury's presence, the court conducted a lengthy discussion with counsel about the state's duplicate testing of blood stains during the course of the trial, the attendant circumstances surrounding the duplicate testing, and the state's request to introduce evidence about additional stains that, during the course of duplicate testing, were identified as blood but did not undergo DNA analysis. The trial court determined defendant would be prejudiced by testimony regarding the additional stains, and it limited testimony to those stains originally tested and re-tested.
Any testimony about additional blood stains was ambiguous, at best. Contrary to defendant's contention, the testimony about blood evidence is not so direct or succinct as to prejudice defendant's theory that the victim's blood was found on defendant due to chance contact with the perpetrator of the crimes. Defendant is not persuasive in arguing he was highly prejudiced and denied a fair trial because a state witness referred to additional spots of untested blood.
Nor is defendant persuasive in contending he was denied effective assistance of counsel. To demonstrate ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
As noted, any reference to untested blood stains was ambiguous, at best. Defense counsel's failure to object to the ambiguous testimony may well have been a strategic decision designed to avoid further attention to the testimony or possible clarification following an objection. Moreover, because, as noted, defendant was not substantially prejudiced by the testimony, defendant has failed to demonstrate ineffective assistance of counsel. Defendant's third assignment of error is overruled.
Defendant's fourth assignment of error contends defendant was highly prejudiced and denied a fair trial when a witness's testimony suggested defendant previously had been imprisoned.
At trial, a defense witness testified on cross-examination as follows: "Q. How long did you live with [defendant]? A. He was basically staying with me from the time he came home." (Tr. 493.) Later, the same witness testified: "A. As I said, I was seeing [defendant] every day since he was released in February of last year, so I would say two, maybe two and a half or three months." (Tr. 494.) Following that testimony, the court conducted a sidebar conference to advise the witness that she was not to refer to prison or defendant's release from prison. Defendant, however, did not move to strike the testimony on which his assignment of error is premised.
Relying on State v. Breedlove (1971), 26 Ohio St.2d 178, 183, defendant contends he was highly prejudiced and denied a fair trial based on the defense witness's testimony. In Breedlove, mugshot photographs with police identification numbers, coupled with the direct testimony of a state witness that the pictures in evidence were "photographs of guys that have committed crimes," suggested to the jury that Breedlove had prior trouble with the law. Despite a limiting instruction to disregard a police sergeant's statement that the photographs were of "possible suspects of armed robbery and burglaries," the Ohio Supreme Court held that, under the circumstances, the admission of the photographs from police files with police file numbers, and witness testimony with respect to the identification of the defendant from police photographs, constituted prejudicial error. See, also, State v. Hector (1969),19 Ohio St.2d 167, paragraph one of the syllabus.
Here, unlike Breedlove, the defense witness's statements contained no references to criminal activity, and the witness's references to "when he came home" and "after he was released" are vague, at best. Indeed, the testimony could refer to release from a non-penal setting, such as from a hospital following treatment. Because the indefinite language at issue, as well as the lack of any clear reference to defendant's having "committed another crime wholly independent of the offense for which he is on trial," id., defendant's fourth assignment of error is unpersuasive, and is overruled.
Defendant's fifth assignment of error contends the trial court abused its discretion by sentencing defendant to the maximum sentences for felonious assault, aggravated burglary and rape, by sentencing defendant to an additional seven years as a repeat violent offender, and by failing to adequately set forth reasons to support consecutive sentences.
The Ohio Supreme Court in State v. Edmonson (1999), 86 Ohio St.3d 324, acknowledged a public policy disfavoring maximum sentences except for the most deserving offender, stating that "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders * * *." Id. at 328, quoting R.C.2929.14(C). (Emphasis sic.) "[T]he record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329. While R.C. 2929.14(C) itself does not require that the trial court state its reasons for imposing the maximum sentence, R.C. 2929.19(B)(2)(d) does. Moss, supra. Thus, the trial court is not only required to make the requisite findings under R.C. 2929.14(C), but also to state its reasons, as required under R.C.2929.19(B)(2)(d). State v. Legg (Mar. 7, 2000), Franklin App. No. 99AP-574, unreported.
The trial court addressed the requisite findings and gave its reasons for imposing the maximum sentences for defendant's convictions. Specifically, the trial court noted it was to determine if defendant committed one of the worst forms of the offense or posed the greatest likelihood of committing future crimes. Addressing that requirement, the court stated, "But the Court can't imagine a more serious offense. We have a 76-year-old woman who was raped and beaten, broken ribs, punctured lung, dragged around to an ATM machine, back to her house, luckily escaped * * * beaten within an inch of her life, 76 years old. * * * So it's the Court's opinion and, again, that this offense is the worst form of the offense that could be committed, rape, robbery, burglary, felonious assault, the worst form * * *." (Tr. 611-612.) In addition, the trial court found, based on defendant's record and the frequency with which he reoffended after being released on parole, that he posed the greatest likelihood of committing future crimes. Because the trial court made the requisite findings for imposing the maximum sentence and further set forth its reasons for so concluding, defendant's contentions regarding the imposition of maximum sentences are not well-taken.
R.C. 2929.19(B)(2)(c) and 2929.14(E)(4) authorize a trial court to impose consecutive sentences under selected circumstances. Former R.C.2929.14(E)(4), in effect at the time of the sentencing hearing, stated:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B) provides:
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
At the sentencing hearing, the trial court attempted to meticulously address the elements of R.C. 2929.14(E)(4) in the midst of trying to fully comply with multiple sentencing provisions. In so doing, the trial court concluded that "consecutive sentences are necessary to protect the public from future crimes" and "that anything less than consecutive maximum sentences in this case would demean the seriousness of the offense. This offense is the most serious conduct of the offense that could be committed." (Tr. 617-618.) The trial court's statement addresses the first branch of R.C. 2929.14(E)(4). The trial court, however, did not fully address the language from R.C. 2929.14(E)(4) relating to consecutive sentences not being disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Instead, the court found no "single prison term for any one of these offenses * * * would adequately reflect the seriousness of the conduct of this case." (Tr. 617.) That statement, however, fails to deal with the danger defendant poses to the public. Given the Ohio Supreme Court's instructions in Edmonson, we reluctantly conclude the trial court failed to fully state the second predicate for imposing consecutive sentences under R.C. 2929.14(E)(4). We do not suggest such a finding is not appropriate on the evidence in this case, but only that a part of the necessary findings is absent.
Nonetheless, the trial court found under R.C. 2929.14(E)(4)(a), (b), and (c) that (1) defendant had committed the crimes at issue while he was under post-release control, (2) no single prison term for any of the offenses committed as a part of a single course of conduct would adequately reflect the seriousness of this case, and (3) defendant's criminal history demonstrated that consecutive sentences were necessary to protect the public from future crimes. (Tr. 616-618.) Because, however, the trial court did not fully comply with R.C. 2929.14(E)(4), as noted, the issue of consecutive sentences must be remanded for resentencing.
Lastly, the trial court did not abuse its discretion by sentencing defendant to an additional seven years based on its finding that defendant was a repeat violent offender. Former R.C. 2929.14(D)(2)(b), in effect at the time of the sentencing hearing, provided:
 If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:
 (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
After reviewing the relevant statutory authority, the trial court concluded that "anything less than the maximum prison terms in this case would not adequately protect the public from the offender from future crime and others. The Court has weighed the aggravating factors, the likelihood of recidivism, and do so find in this case." (Tr. 614-615.) Continuing, the court stated: "It also finds that, `The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious * * *. The Court finds that anything less than the maximum sentence on each count would demean the seriousness of the offense, that his conduct was * * * in this case, the offense is probably the most serious conduct that could ever be done constituting the offense such as this, and the Court so finds with respect to that section." (Tr. 615-616.) Because the trial court addressed the necessary aspects of the repeat violent offender sentencing provisions, defendant's contentions to the contrary are not persuasive.
Defendant also contends the trial court abused its discretion because the felonious assault conviction was part of the same transaction as the aggravated robbery and burglary convictions, and the receiving stolen property elements were duplicated in the aggravated robbery count. In support of his contention, defendant cites to this court's decision in State v. Washington (June 8, 2000), Franklin App. No. 99AP-640, unreported, appeal after new sentencing hearing, (July 17, 2001), Franklin App. No. 00AP-1077, unreported. The facts of Washington are distinguishable from the facts of this case. Washington dealt with the imposition of consecutive prison terms for firearm specifications attached to felonious assault and theft convictions under former R.C.2929.14(D)(1)(a)(i). Former R.C. 2929.14(D)(1)(a)(i) provided that a "court shall not impose more than one additional prison term on an offender under this division for felonies committed as part of the same act or transaction." Washington is inapposite to the facts of this case, as it involves the standard for sentencing on specifications. Instead, defendant is rearguing R.C. 2941.25, a contention we found unpersuasive under defendant's first assignment of error. Accordingly, defendant's fifth assignment of error is overruled in part and sustained in part.
Having overruled defendant's first, second, third, and fourth assignments of error, but having overruled in part and sustained in part defendant's fifth assignment of error, we affirm defendant's conviction and sentence, with the exception of the order that the sentences be served consecutively. On that issue alone, we remand for resentencing.
Judgment affirmed in part and reversed in part; case remanded for resentencing.
BOWMAN and DESHLER, JJ., concur.